# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| APOLLO ENDOSURGERY, INC. | § | |
| | § | |
| v. | § | A-20-CV-0219-RP |
| | § | |
| DEMETECH CORPPORATION | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO:  THE HONORABLE ROBERT PITMAN
     UNITED STATES DISTRICT JUDGE

Before the Court are Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction and Improper Venue or Alternatively to Transfer Venue (Dkt. No. 8); Plaintiff's Opposition (Dkt. No. 10); and Defendant's Reply (Dkt. No. 11). The undersigned submits this Report and Recommendation to the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules.

## I. GENERAL BACKGROUND

Apollo Endoscopy is a medical technology company. Dkt. No. 1 at ¶ 1. DemeTECH Corporation is a manufacturer of medical supplies. *Id.* In 2011 Apollo engaged DemeTECH to supply suture products for Apollo's endoscopic suturing system, which led to the parties entering into a Manufacturing Supply Agreement (MSA). Dkt. No. 1-1. DemeTECH manufactured suture supplies to Apollo's specifications for several years under the Agreement. Dkt. No. 1 at ¶ 1. Asserting that DemeTECH was unable to meet its needs in its efforts to expand into new markets, Apollo terminated the MSA, and began seeking its supplies from an alternate source, which led to DemeTECH threatening to sue Apollo for breach of contract and infringement of intellectual

property rights. Apollo thus filed this suit seeking a declaratory judgment that it did not breach the MSA and did not infringe on DemeTECH's intellectual property rights. Dkt. No. 1 at ¶ 3.

DemeTECH's motion asserts that (1) the Court lacks subject matter jurisdiction as Apollo has failed to adequately allege the minimal jurisdictional requirement of $75,000; (2) venue is improper as DemeTECH is a Florida corporation with no Texas contacts, and the parties agreed to a forum selection clause in a Non-Disclosure Agreement entered into after the MSA requiring that litigation occur in Florida; and alternatively (3) because venue is improper in the Western District of Texas, because the parties agreed to venue in Florida, and for the convenience of the parties, the case should be transferred to the United States District Court for the Southern District of Florida. Dkt. No. 8 at 2-3.  Apollo responds that it has adequately established that the amount in controversy exceeds $75,000, that venue is proper because the MSA includes a valid forum selection clause specifying Austin, Texas as the proper forum for any dispute arising from the MSA, and that the NDA did not supersede the MSA. Dkt. No. 10.

## II.  STANDARDS OF REVIEW

### A.    Rule 12(b)(1) Standard

Federal Rule of Civil Procedure 12(b)(1) allows a party to assert lack of subject-matter jurisdiction as a defense to suit. Federal district courts are courts of limited jurisdiction, and may only exercise such jurisdiction as is expressly conferred by the Constitution and federal statutes. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A federal court properly dismisses a case for lack of subject matter jurisdiction when it lacks the statutory or constitutional power to adjudicate the case. *Home Builders Assn. of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party

asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), cert. denied, 536 U.S. 960 (2002). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id.* In ruling on a Rule 12(b)(1) motion, the court may consider any one of the following: (1) the complaint alone; (2) the complaint plus undisputed facts evidenced in the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008). Where a defendant attacks jurisdiction based solely on the allegations of the complaint, the plaintiff's factual allegations are presumed to be true. *O'Rourke v. United States*, 298 F. Supp. 2d 531, 534 (E.D. Tex. 2004). Dismissal for lack of subject matter jurisdiction is appropriate when the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief. *Warnock v. Pecos County, Tex.*, 88 F.3d 341, 343 (5th Cir. 1996).

**B.     Rule 12(b)(3) Standard**

DemeTECH cites to Rule 12(b)(3) as the basis for its for its venue motion. A party moving to dismiss based on improper venue does so pursuant to Rule 12(b)(3). FED. R. CIV. P. 12(b)(3). For civil cases filed under the Court's diversity jurisdiction, venue is proper in: (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action. 28 U.S.C. § 1391(b)(1)-(3). In determining whether venue is proper, "the court must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff."

*Braspetro Oil Servs. v. Modec (USA), Inc.*, 240 F. App'x 612, 615 (5th Cir. 2007). However, the Court may consider evidence in the record beyond the facts alleged in the complaint and its attachments, including affidavits or evidence submitted by the parties as part of the venue motion. *Ginter ex rel. Ballard v. Belcher, Prendergast & Laporte*, 536 F.3d 439, 449 (5th Cir. 2008). When it is determined a case is filed in a division or district of improper venue, the district court may either dismiss the case or transfer it to any district or division of proper venue. *See* 28 U.S.C. § 1406(a).

In *Atlantic Marine Construction Co. v. United States District Court for the Western District of Texas*, 571 U.S. 49 (2013), the Supreme Court held that motions to enforce mandatory forum selection clauses setting venue in a specific federal forum are properly brought under 28 U.S.C. § 1404(a), because Rule 12(b)(3) and § 1406 both presuppose that venue in the chosen forum is wrong, while a § 1404(a) motion "does not condition transfer on the initial forum's being wrong." *Atl. Marine,* 571 U.S. at 59. Thus DemeTECH's assertion that the NDA forum selection clause designating Florida as the proper forum must be brought through a motion to transfer venue under § 1404(a). *Landstar Freeway, Inc. v. Cent. Freight Lines, Inc.*, 2020 WL 1277206, at *3 (W.D. Tex. Mar. 17, 2020).

**C.**     **28 U.S.C. § 1404(a) Standard**

Title 28 U.S.C. § 1404(a) provides that, for the convenience of parties and witnesses, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented. 28 U.S.C. § 1404(a). "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an "'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622

(1964)). The party moving for transfer carries the burden of showing good cause. *See Humble Oil & Ref. Co. v. Bell Marine Service, Inc.*, 321 F.2d 53, 56 (5th Cir. 1963); *see also In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314 (5th Cir. 2008) ("When viewed in the context of § 1404(a), to show good cause means that a moving party in order to support its claim for a transfer, must . . . clearly demonstrate that a transfer is '[f]or the convenience of parties and witnesses, in the interest of justice.'") (quoting § 1404(a)). "The preliminary question under § 1404(a) is whether a civil action 'might have been brought' in the destination venue." *Volkswagen*, 545 F.3d at 312. If this requirement is met, the Fifth Circuit has held that "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004).

### III. ANALYSIS

A.     **Amount in Controversy**

A plaintiff may satisfy the amount in controversy requirement of the diversity statute by either alleging an amount in controversy of $75,000 or more, or by proving by a preponderance of the evidence that the amount in controversy is met. *See Frye v. Anadarko Petroleum Corp.*, 2019 WL 7374806, at *6 (5th Cir. Nov. 4, 2019). As noted previously, Apollo seeks only declaratory relief. It does, however, assert in the complaint that the amount in controversy is $75,000. Dkt. No. 1 at ¶¶ 2, 8. DemeTECH contends that the complaint fails to allege any facts to support this. Apollo responds that not only does its complaint establish an amount in controversy greater than $75,000, but it also has submitted additional evidence that supports that amount. The Court agrees.

The Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, does not provide a federal court with an independent basis for exercising subject-matter jurisdiction. *In re B-727 Aircraft Serial No.*

5

*21010*, 272 F.3d 264, 270 (5th Cir. 2001) (citing *Gaar v. Quirk*, 86 F.3d 451, 453 (5th Cir. 1996)). Thus, to establish jurisdiction, Apollo must demonstrate that the amount in controversy is satisfied.[1] In an action for declaratory relief the amount in controversy is the value of the right to be protected or the extent of the injury to be prevented. *St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1252-53 (5th Cir. 1998) (quoting *Leininger v. Leininger*, 705 F.2d 727, 729 (5th Cir. 1983)).

As mentioned, it its complaint, Apollo states that "[p]urchase orders under the MSA annually exceeded $75,000. Purchase orders issued after termination of the MSA also exceeded $75,000." Dkt. No. 1 at ¶ 2. In addition, in response to the motion to dismiss, Apollo submitted the Declaration of John Molesphini, Executive Vice President of Operations at Apollo. Dkt. No. 10-2. He states that Apollo purchased suture packs from DemeTECH between April 2015 and April 2019 (which the complaint pleads were in amounts exceeding $75,000 in each of those years), and that before it filed suit, Apollo had started buying suture packs from on alternative supplier. *Id* at ¶¶ 3-4. As of the date suit was filed, Apollo had spent in excess of $75,000 on suture packs purchased from the alternative supplier, and it intends to continue purchasing suture packs from alternative suppliers in an amount that exceeds $75,000. *Id.* at ¶¶ 5-6.

DemeTECH argues that these purchase order amounts prior to and after termination of the MSA are irrelevant because neither of Apollo's two claims refer to purchase orders or ask for any declaration related to one or more purchase orders. This is too specific a focus, however. In the MSA, DemeTECH agreed to manufacture and supply, and Apollo agreed to purchase, certain suture products. The purchase orders described by Molesphini are for the products DemeTECH agreed to manufacture, and Apollo agreed to buy under the MSA. Molesphini's testimony thus reflects that

---

[1] The parties all agree that they are of diverse citizenship.

pursuant to the contract Apollo had paid DemeTECH more than $75,000 in each of the four years the MSA was in place, and, since it terminated the MSA, it has already spent $75,000 on sutures, and anticipates spending in the future $75,000 or more purchasing replacement suture products. This is direct evidence suggesting that the value of the contract in issue exceeds $75,000, and is sufficient to meet the amount in controversy requirement for diversity jurisdiction.

Additionally, Apollo has presented evidence that DemeTECH claims that the "racetrack" suture technology is its proprietary technology, and that Apollo may not manufacture sutures with another supplier using that intellectual property. Dkt. No. 10-3. DemeTECH sent Apollo a cease and desist letter on February 11, 2020, regarding that technology and making that claim. Dkt. No. 10-4. Neither party has submitted evidence of the value of the intellectual property rights in this technology, but certainly it is in excess of zero. And, as Apollo notes, "there is a dispute over whether Apollo can rightfully source product worth substantially more than $75,000 from other suppliers." Dkt. No. 10 at 4. This evidence demonstrates that the object of this litigation has a value exceeding $75,000, and thus that Apollo has met the amount in controversy requirement to establish diversity jurisdiction over this case.

**B.     Venue**

Both parties agree that the proper venue for this case is to be determined by looking to a contract in which the parties agreed to a venue for any dispute between them. The dispute between them is *which* contract governs the issue—the MSA or the later-signed NDA. It is well-settled that parties may contract for a given venue, and that venue is proper in a district agreed to under a forum selection clause—even if that district would not have been proper under § 1391. *See, e.g., Huawei Techs. Co., Ltd. v. Yiren Huang*, 2018 WL 1964180, at *7-8 (E.D. Tex. April 25, 2018), mandamus

denied, No. 18-4055 (5th Cir. July 5, 2018) (unpublished); *WorldVentures Holdings, LLC v. Mavie*, 2018 WL 6523306, at *14 (E.D. Tex. Dec. 12, 2018). As the Supreme Court noted in *Atlantic Marine*, a contractual forum-selection clause "represents the parties' agreement as to the most proper forum," and enforcing such clauses "protects their legitimate expectations and furthers vital interests of the justice system." *Atl. Marine*, 571 U.S. at 63. "When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Id.* at 64.

The question is thus which forum selection clause controls in this case. Apollo relies upon the clause contained in the contract at issue here, the MSA, which states:

> 10.7 Governing Law and Venue. Notwithstanding its place of execution or performance, this Agreement shall be governed by and construed in accordance with the laws of the State of Texas, irrespective of its laws regarding choice or conflict of laws. Any dispute arising under or relating to this Agreement shall be submitted for resolution to a state or federal court of competent jurisdiction in Austin, Texas, and the Parties hereby agree to submit to the jurisdiction and venue of such court.

Dkt. No. 1-1. DemeTECH in turn relies on an NDA the parties entered into on July 31, 2018. As explained by Molesphni, the NDA was entered into when Apollo was considering acquiring DemeTECH to resolve the supply chain issues it was having with DemeTECH. Dkt. No. 10-2 at ¶ 11. The relevant forum selection language of the NDA is:

> 11. This agreement is for the benefit of each respective party and its Representatives, and shall be governed by and construed in accordance with the laws of the State of Florida, without regard to the conflict of laws provisions thereof. The parties hereto hereby irrevocably and unconditionally consent to submit to the exclusive jurisdiction of the courts of the State of Florida and of the United States of America located in the State of Florida . . . . The parties hereto hereby irrevocably and unconditionally waive any objection to the laying of venue of any action, suit or proceeding arising out of this agreement or the transactions contemplated hereby, in the courts of the State of Florida or the United States of America located in the State of Florida, and hereby further irrevocably and unconditionally waive and agree not to plead or claim

8

> in any such court that any such action, suit or proceeding brought in any such court has been brought in an inconvenient forum.

Dkt. No. 8-1. The NDA also contains language regarding its impact on the parties' prior contracts:

> 12. This agreement contains the entire agreement between the parties regarding its subject mater and supersedes all prior agreements, understandings, arrangements and discussions between you and the Company regarding such subject matter. However, the parties acknowledge and agree that this agreement shall not impact any rights, duties or obligation in relation to the existing and ongoing business between the parties.

Dkt. No. 8-1 (emphasis added).

DemeTECH does not argue that the forum selection clause in the MSA is invalid, but rather contends that the forum selection clause in the NDA supersedes it. Apollo disagrees, and points to two aspects of the NDA's language in support. First, it notes that the NDA venue provision itself states that it applies only to any "action, suit or proceeding *arising out of this agreement or the transactions contemplated hereby*." *Id*. at ¶ 11 (emphasis added). Since Apollo's claims arise out of the MSA, it argues the NDA venue provision, by its own terms, has no application. Second, Apollo notes that the language DemeTECH relies on for the claim that the NDA superseded the MSA is not as broad as DemeTECH suggests, and instead only states that it supersedes agreements "regarding [the] subject matter" of the NDA. *Id.* at ¶ 12. Indeed, Apollo points out, in the next sentence of that clause the parties agree that the NDA "shall not impact any rights, duties or obligation in relation to the existing and ongoing business between the parties." *Id.*

DemeTECH's contests this interpretation. It argues that Apollo's claim "that the subject matter of the NDA is specifically and narrowly the possibility of APOLLO acquiring DEMETECH," is misplaced, and is only "APOLLO's interpretation and nowhere in the NDA is the subject matter identified this narrowly, or at all." Dkt. No. 11 at 7. DemeTECH is demonstrably wrong on this

9

front, however. The very first sentence of the NDA proves this: "In connection with your consideration of a possible transaction with DemeTech Corporation and/or their affiliates and subsidiaries (the "Company"), Apollo Endosurgery, Inc. ("Apollo") has requested and will be provided information concerning the Company and Apollo shall provide to DemeTech confidential information pertaining to Apollo." Dkt. No. 8-1 at ¶ 1. What follows is a fairly standard non-disclosure agreement for parties contemplating a sale or merger. There is simply no way to read the NDA as a whole as anything other than a limited agreement providing for the confidentiality of information shared by two companies contemplating a business transaction. Thus, when read in the context of the document, the statement that the NDA only supersedes agreements "regarding such subject matter," and the provision that it "shall not impact any rights, duties or obligation in relation to the existing and ongoing business between the parties," makes it quite plain that the NDA provisions have no applicability to a dispute under the MSA—the very agreement that defined the parties' "existing and ongoing business." In short, DemeTECH's claim that the NDA forum selection provision governs this dispute is proven wrong by the language of the NDA itself. Instead, the applicable forum selection clause is that contained in the MSA, which sets venue in a state or federal court in Austin, Texas. Venue is therefore proper in this Court.

**C.     Transfer**

DemeTECH alternatively requested the case be transferred to the Southern District of Florida based on the NDA's forum selection clause. Because the Court has found that forum selection clause inapplicable, transfer to Florida on the basis of the NDA would be improper. Similarly, DemeTECH's requests that the case be transferred to Florida pursuant to the doctrine of forum non

conveniens and 28 U.S.C. § 1404(a) is meritless. DemeTECH has waived this argument by agreeing to the forum selection clause set forth in the MSA. *Atl. Marine*, 571 U.S. at 64.

### III. RECOMMENDATION

Based on the preceding discussion, the undersigned **RECOMMENDS** that the Court **DENY** Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction and Improper Venue or Alternatively to Transfer Venue (Dkt. No. 8). The Clerk is directed to return this case to the docket of the Honorable Robert Pitman.

### IV. WARNINGS

The parties may file objections to this Report and Recommendation. Objections must specifically identify those findings or recommendations to which objection is being made. The District Court need not consider frivolous, conclusive, or general objections. *Battles v. United States Parole Comm'n,* 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

SIGNED this 26th of August, 2020.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE